THE HONORABLE BRIAN A. TSUCHIDA

1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT TACOMA

9
UNITED STATES OF AMERICA,

No.  CR 16-0005 BAT
10
                                    Plaintiff,

11                                                     **DEFENDANT JONATHAN
                                                         LOVE'S SENTENCING
12      v.                                               MEMORANDUM**

13    JONATHAN M. LOVE,

14                                    Defendants.

15

16                        **I.  Procedural History**

17        Ignacio Lanuza filed a civil claim against the United States on February 13, 2014,

18    alleging that he was tortiously deprived of constitutional rights in his immigration proceedings.

19
Lanuza's claim was denied and he filed suit against the United States and Jonathan Love in his
20
personal capacity asserting *Bivens* liability. *See Ignacio Lanuza v. United States of America*, 14-
21
cv-01641-MJP (W.D. Wa). Jonathan filed a motion to dismiss which was granted on March 20,
22
2015.
23

24        On January 13, 2016, the United States charged Jonathan Love, by way of information,

25    with one count of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242.

26
Dkt. # 1. Jonathan Love entered into a written plea agreement with the United States pursuant to
27
Fed. R. Crim. P. 11(c)(1)(C) and pled guilty to the single count in the information on January 15,
28

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 1
NO.  CR 16-0005 BAT

2016. Dkt. # 6. The Probation Department recommends a sentence consistent with the parties' plea agreement. Sentencing is scheduled for April 20, 2016.

## II. Relevant History and Characteristics

On behalf of Jonathan Love, we respectfully ask the Court to accept the plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and to impose the sentence recommended by the parties. The comprehensive sentence contained within the plea agreement is appropriate considering the nature and circumstances of the offense, Jonathan's personal characteristics, his professional employment as a public servant, and the unique hardships Jonathan will face while incarcerated and upon release. When weighing the recommended sentence, we ask the Court to consider letters from Jonathan's friends and colleagues, his professional commendations arising from his many years of public service, as well as the information contained herein.

The Court has been provided with a thorough and well written Presentence Report (PSR). The report contains considerable detail about Jonathan's history and the offense to which he has pled guilty, including Jonathan's own statements accepting responsibility for his wrongful conduct. For the sake of brevity, we will not repeat that information.

We do wish to highlight Jonathan's ongoing struggle with anxiety and depression with which he has struggled for most of his adult life. These disorders were formally diagnosed in the late 1990s and Jonathan has sought treatment and counseling continually since then. He has successfully addressed these mental health challenges allowing him to lead a productive life, both professionally and personally. However, in periods of elevated stress, such as the circumstances under which he was working when these events took place and in the months leading up to his sentencing, his mental health challenges increase. Removing the uncertainty about his future by receiving his sentence will be an important step toward establishing certainty

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 2
NO.  CR 16-0005 BAT

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

and reconstructing his life.

### III.  The 18 U.S.C. § 3553(a) Factors

When sentencing an individual it is important to look at his life as a whole and not just an individual act of misconduct which is inconsistent with their larger life. The PSR effectively addresses many of the applicable 18 U.S.C. § 3553(a) factors and we will not repeat that which has already been effectively presented to the court. Instead, we draw the Court's attention to an abundance of positives which were not included in the PSR and should be considered by the Court. Specifically, the Court should be aware of and consider Jonathan's career in government service and the adverse impact this case has already had on him.

A.     Jonathan's career in public service

Jonathan has led a life dedicated to public service, his legal community, and his family. Upon learning of this matter, the government began investigating Jonathan's involvement in Lanuza's immigration case, as well as other immigration cases Jonathan has handled, seeking other instances where Jonathan had manipulated court documents. None were discovered as none exist. While his actions have ended his legal career, they cannot overshadow all of Jonathan's contributions to his communities during the past 30 years: serving King County as a deputy prosecutor; serving Spokane County as a deputy prosecutor and modernizing the county's approach to domestic violence; representing the INS by appropriately enforcing the nation's immigration laws; as an INS and DHS attorney, educating local law enforcement on immigration consequences associated with domestic violence crime; and volunteering to serve the government immediately after the September 11 terrorist attacks. Jonathan's transgressions in this instance are wholly inconsistent with the life and career he built over 30 years.

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 3
NO.  CR 16-0005 BAT

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

1.   County prosecutor

Jonathan began his career in public service straight out of law school; shortly after

graduating, he began working as a Deputy Prosecuting Attorney for King County. In the ten

years he spent in the King County Prosecuting Attorney's Office, Jonathan became an energetic

attorney who possessed all of the traits one looks for in a prosecutor. As observed by King

County Superior Court Judge Agid:

> I have watched Jon's skills develop and become honed to the point where he
> handles complex cases with great assurance and professionalism. He is well
> prepared and assertive and, at the same time, shows compassion and
> understanding for traumatized victims (and other witnesses) who come to court to
> testify. He devotes considerable effort to preparing both the case and the
> witnesses so that the presentation is crisp and easy for the jury to follow. Jon
> thinks well on his feet, does not waste time on unnecessary cross examination,
> and is very responsible about informing the court of the applicable authority on
> legal and evidentiary issues that arise before and during trial.

Letter of Susan R. Agid (Nov. 13, 1989) attached as Exhibit A. King County Prosecutor Norm

Maleng used similar terms to praise Jonathan's capabilities as a prosecutor: "I believe that

[Jonathan's] familiarity with the courtroom, trial practice, and the real work of lawyers in the

trenches of criminal law should put him at the top of the list. . . ." Letter of Norm Maleng (Jul.

12, 1994) attached as Exhibit B.

In 1997, Jonathan transitioned into the Spokane County Prosecuting Attorney's Office for

one year, where he, in the words of Prosecuting Attorney James Sweetser, was responsible for

"significant, lasting contributions to increased efficiency in prosecuting crime in Spokane

County. . . ." Letter of James R. Sweester (Feb. 6, 1997) attached as Exhibit C.

> Mr. Love has committed his knowledge, experience, and intense personal effort to
> put in place "charging and disposition standards" that will increase the
> productivity and eliminate waste throughout the criminal justice system in
> Spokane County. Because the process requires endorsement and cooperation of
> the courts, defense bar, and law enforcement, he has invested much of his own
> time as an emissary to those agencies.

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 4
NO. CR 16-0005 BAT

> In addition to those accomplishments, Mr. Love has assumed the preeminent role in establishing a partnership with the City of Spokane as we combine forces to combat domestic violence crime. He has spearheaded efforts to design the prosecution team and to identify and secure needed resources.
>
> In both those initiatives, Mr. Love has demonstrated commitment and invested personal effort well beyond that which could be reasonably expected. Since both initiatives are just beginning, his commitment and attention will be ongoing as the programs mature.
>
> *Id.*

It should be noted that, while not referenced by Prosecuting Attorney Sweetser, the creation of filing and deposition standards also benefit the accused and their legal counsel by standardizing the rationales that govern charging decisions. Jonathan's efforts to combat domestic violence extended to leading trainings for local law enforcement and victims' service providers, which allowed responding officers to better understand the evolving approach toward domestic violence crime in that county. Letter of Greg Conner (Jan. 10, 1997) attached as Exhibit D ("Because of the professionalism and commitment to excellence of your office, and that of Jon Love, our commissioned personnel have a better understanding of the positive prosecutorial future of domestic violence cases."). *See also* Performance Report from James R. Sweester (Dec. 23, 1996) attached as Exhibit E ("Jon continues to tactfully work with all people in the judicial system and outside agencies to make 'real' meaningful changes for the benefit of victims and the Spokane community."). Jonathan's initiative demonstrated his passion for improving the criminal justice system by making the Spokane County Prosecuting Attorney's Office more transparent, effective, and efficient.

2.      Federal immigration attorney

In 1998, Jonathan was hired by the Department of Justice as an Assistant District Counsel for the Immigration and Naturalization Service (INS) in San Antonio, Texas. In this new posting

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 5
NO.  CR 16-0005 BAT

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

Jonathan provided legal assistance and training to operational units of the INS and represented

the Service in removal, asylum, citizenship, appeal, and adjustment of status proceedings.

Jonathan was instrumental in fostering collaboration between local and national law

enforcement agencies, thereby enhancing each agency's ability to carry out its duties to the

public. For example, Jonathan helped integrate the Instructional Removal Program (IRP) in

Eden, Texas. Letter of Alex Rodriguez (June 1, 2001) attached as Exhibit F. The IRP was a

federal program that collaborated with state agencies to identify illegal aliens convicted of

deportable criminal conduct in state intuitions. Alex Rodriguez, the IRP Director at the Eden

facility, commended Jonathan for his

> immeasurable assistance in the operational establishment of removal hearings at
> Eden. Increases in hearings and removal orders have steadily risen, due in large
> part to Mr. Love's ability to quickly turn around cases.
>
> Aside from his high work ethics, Mr. Love has established strong
> communications with all members of the Eden staff. As a result we have been
> able to open and complete cases in as short a period as one week. In our district,
> an uncompleted case from Eden translates into an average of twenty-five hundred
> dollars in detention costs. In fiscal Year 2001, the unit has been able to keep these
> costs to a minimum by completing 910 of the 947 (96%) cases releasing to our
> custody. This is a dramatic difference from the 63% in 1999 and the 80% in 2000.
> Mr. Love has been instrumental in those achievements as his efforts towards
> completing cases as expeditiously as the law allows has promoted the operational
> effectiveness and success of the program.
>
> Please express my gratitude to Mr. Love for his support and thank you for making
> this outstanding attorney available to my program.
>
> *Id.*

Indeed, his collaboration with local law enforcement was also recognized by local prosecuting

attorneys. Letter of Jana K. McCown (Aug. 13, 2002) attached as Exhibit G.

Jonathan also played a direct role in serving the country immediately after the September

11 terrorist attacks. At that time, Jonathan was assigned to a special posting in the National

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

Security Unit in Washington D.C. to assist law enforcement and investigators working to pursue those posing a security risk to our country. He was on-call for 24 hour shifts providing legal advice to law enforcement around the country on issues relating to charging decisions, bond and detention issues, and detainees' legal status. His service was immediately recognized with a Sustained Superior Performance Award on September 27, 2001, Letter of Bo Cooper (Sept. 27, 2001) attached as Exhibit H, and later with a Special Act Award on March 29, 2002. Letter of Dea Carpenter (Mar. 29, 2002) attached as Exhibit I. The Special Act Award is

> based on the special contributions you made to the Office of the General Counsel and the Legal Program in the weeks and months immediately following the World Trade Center attacks. As a group you, and other volunteers through the Nation, served a critical role in the administration of the World Trade Center Task Force.
>
> You contributed significantly to the development of policies and procedures for the Service to follow in the aftermath of the September 11 terrorist attacks. For nearly a three-month period, the Office of the General Counsel was required to staff the INS Command Center, the FBI SIOC, and separate Legal Sufficiency Review Team on a 24-hour, seven-day-a-week basis. This around-the-clock coverage required huge sacrifices on the part of the employees, requiring routine night and weekend shifts. Numerous employees were unable to follow their Alternative Work Schedules (AWS) during this time period, and their personal time with their families as the holidays approached was severely limited.
>
> Your special accomplishments during this historically significant time certainly warrant recognition. These accomplishments have demonstrated outstanding professionalism and are a tribute to the Office of the General Counsel and to the agency as a whole. The sacrifices you and others made in the post 9-11 period are truly commendable, and contributed significantly to the success of the service in managing its responsibilities in the months following the tragedies.

*Id.*

In the early and mid-2000s, Jonathan continued to dedicate himself to public service, often receiving written and pecuniary acknowledgment of his successes. In regards to a terrorism case Jonathan prosecuted, his supervisor, Allen Tilson, wrote:

> Jon did an outstanding job on two terrorist cases which contained secret information and a closed hearing. The case were of regional/national significance,

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 7
NO. CR 16-0005 BAT

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800 Fax (206) 233-2809

his approach was creative, involving novel and complicated legal and factual
issues, he devoted substantial effort + hours much of which was on his own time
to ensure the government's case was properly presented. The terrorists were
represented.

Time-Off Award Approval Form from Allen Tilson (Jan. 9, 2003) attached as Exhibit J. High

profile and high stakes prosecutions, such as the case referenced by Mr. Tilson, were often

assigned to Jonathan.

As numerous agencies were reorganized under the Department of Homeland Security,

Jonathan continued to cross-train agents in related agencies to improve the function of the justice

system. Jonathan specifically contributed to U.S. Citizenship and Immigration Services by

reviewing aliens' applications for replacement registration cards:

> Mr. Love has assisted our office by analyzing relevant information on each case
> and giving our staff sound advice on Section 212 and Section 237 removal
> grounds. He is always available when a question or issue arises regarding criminal
> aliens.
>
> * * *
>
> [Significantly], due to his assistance, we have been able to clear and move
> forward with adjudication of approvable applications.
>
> * * *
>
> He exemplifies the "one team" sprit of the Department of Homeland Security. We
> sincerely appreciate his professionalism and assistance.

Letter of Kenneth L. Pasquarell (June 12, 2006) attached as Exhibit K. While assisting other

branches of the Department, he was able to continue to provide the Immigration and Customs

Enforcement with the highest level of representation.

> In nominating you for the award, I specifically noted the initiative you took in this
> office in cases involving simple assault arguing that such crimes are also crimes
> of violence and of domestic violence. You received praise from the Appellate
> Counsel for the brief you wrote on this issue to the BIA (Board of Immigration
> Appeals). You received a commendation from the San Antonio CIS (Citizenship
> and Immigration Services) Director for your voluntary efforts in reviewing files
> and drafting NTAs (Notices to Appear) for CIS.

Letter of Gregory J. Ball (Aug. 10, 2006) attached as Exhibit L.

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

In 2007, Jonathan and his family moved back to Seattle, Washington, where he continued working for DHS. Letters of commendation by his DHS supervisors abruptly ceased upon his return to Seattle. He and his supervisor were engaged in a protracted workplace dispute that took years to resolve, which occurred contemporaneously with the misconduct to which he pled guilty in this case. While his direct DHS supervisor in Seattle took steps to undermine his work, Jonathan remained dedicated to his job and remained a proud public servant.

Jonathan resigned from government service on November 28, 2015, as a direct result of these proceedings. He is in the process of resigning from the Colorado State Bar Association, pursuant to the plea agreement of the parties. As a condition of his plea agreement, Jonathan has agreed to surrender his license to practice law and to not seek readmission for at least ten years. Jonathan will be 68 years old when he will be eligible under the terms of his plea agreement to petition for reinstatement. His legal career is effectively over, and he understands that fact.

Although Jonathan has explored other fields of work, he has not been able to commit to any new position with his future availability to take a job in question.

Jonathan feels a profound sense of loss and remorse for his actions. After decades of battling depression, Jonathan always had his sense of pride in his position as a government attorney and his skills as a courtroom advocate. He understands that both of these are lost to him and that he will have to build himself a new life after he is sentenced. As he concludes his letter to the Court: "I am truly sorry to all I have hurt through my offense. I take full responsibility." Letter of Jonathan Love attached as Exhibit M.

B.    Repercussions already suffered

Jonathan is proud of his contributions and his public service; as such, he is devastated by guilt and shame for this one misdeed.

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 9
NO.  CR 16-0005 BAT

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

> I know Jon is very sorry for what he did; he has told me so. He has stated to me multiple times that he wants to apologize to all of the people he has impacted.
>
> * * *
>
> Jon has paid a heavy price for his actions. He lost his job and his law license. He will likely lose his liberty as well. I believe when Jon is able to move on from this he will spend the rest of his life trying to make a better person of himself.

Letter of Robert S. Marconi (Mar. 31, 2016) attached as Exhibit N. Those who have known Jonathan for decades are shocked that he committed this transgression, as such conduct is completely at odds with the person and lawyer they know.

> [As opposing counsel] I looked forward to having cases with Jonathan because I knew that he would be a tough, yet fair prosecutor. . . . At times I would call Jonathan to ask legal questions and solicit advise on cases and he was always more than happy to oblige even though he didn't have to and did so only out of the kindness of his heart.
>
> * * *
>
> His inability to practice law is an extremely harsh punishment and one that will have a lasting impact on his family. . . . This one brush with the law is completely out of character and not a true representation of who Jonathan is and who he has been in his lifetime.

Letter of Amanda J. Stevens (Mar. 18, 2016) attached as Exhibit O. Despite the difficulty of taking responsibility for the actions that damaged all that he has worked for, Jonathan has done just that in an effort to provide Lanuza closure and to allow himself an opportunity at redemption.

> I understand that Jon has bravely admitted to the wrongfulness of his action by pleading guilty. This was the proper thing to do but I imagine it was a painful decision that brought him to grips with what he did. . . .
>
> Ever since this matter was reported in the newspapers I have not spoken with Jon, despite my efforts to talk with him and have him over to my house to see my family. The humiliation and dishonor has taken a tremendous toll on him. He has isolated himself, his marriage has ended and he is broke. His legal career is gone. I do not believe that he is able to find meaningful employment. He is too embarrassed to meet with his friends. Jon knows that he made a huge mistake and he is extremely remorseful. This is painfully sad for him, his friends and his family. Shame and isolation can be the most powerful punishment a man can experience.

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

> The fact that Jon committed this crime is shockingly at odds with the person I
> know because the most precious person in his life is his daughter Mylah, who is
> an immigrant child he and his ex-wife adopted from Guatemala.

Letter of Bruce C. Hori attached as Exhibit P. Jonathan is sickened at the perception that he is personally prejudiced in some way against aliens because his daughter was, herself, an alien. To the contrary, Jonathan's career in federal service was dedicated to the fair application of the immigration laws to the benefit of all residing in the United States, citizen and alien alike.

To those who know Jonathan, the conduct to which he has admitted is fundamentally inconsistent with the Jonathan Love they know.

> This situation is not representative of the man I know. Jon is a generous, caring,
> loving person. He took the extraordinary step of adopting his daughter Mylah
> from Guatemala, rescuing her from a life of poverty and struggle, giving her the
> chance to live a life of endless possibility. I have witnessed Jon and Mylah
> together many times during overnight trips in Seattle and I can say without
> reservation that he is a fantastic father. Mylah loves her dad unconditionally and I
> know that she is his greatest joy in life.

Letter of Victor Mason (Mar. 21, 2016) attached as Exhibit Q. Despite his own legal and financial difficulties, Jonathan's primary concern has always been the impact they would have on his children. As a close college friend observed,

> When I first learned of the charges and punishment that Jon faced, I was struck by
> his singular concern for the impact it would have on his youngest daughter,
> Mylah. My friend was facing the loss of his job, financial ruin, humiliation and
> the very real possibility of jail time. And yet the only worries I heard him express
> were for the effect this would all have on Mylah. Over the many months and
> countless conversations that have followed, I have expected to hear Jon eventually
> sober to the profound ways which his actions will forever cast a shadow over his
> own future. But I have not heard him once turn his focus away from Mylah.

Letter of Liz Blackman (Mar. 23, 2016) attached as Exhibit R. Jonathan is wracked with inner torment and anguish over the damage he has done to himself, his family and his profession.

Jonathan shares his friend's difficulty to explain why he committed this crime. There is no rational reason for Jonathan to have submitted the falsified document as no possible benefit to

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 11
NO.  CR 16-0005 BAT

Jonathan could have resulted. Similarly, there is no reason for Jonathan to have submitted the falsified document in Lanuza's case rather than any of the other active cases in Jonathan's caseload. He remains deeply troubled by the fact that he cannot explain why he committed a crime for which he lost his career, his ability to practice law, and his liberty.

Jonathan will face unique safety concerns when he begins serving his time in prison. As a career prosecutor, Jonathan will serve his time in incarceration with men he has made a career of prosecuting. We fear for Jonathan's physical safety in prison and have shared these concerns with the Bureau of Prisons. Letter of Robert G. Chadwell and Matthew D. Diggs (Feb. 25, 2016) attached as Exhibit S. The United States shares this concern and joined in our communication with the Bureau of Prisons. We fear that while Jonathan serves his time in prison, he will either be at constant threat of physical violence, or that the will be confined to administrative segregation for his own protection. While all defendants suffer a degree of discomfort when serving their term of imprisonment, Jonathan will endure unique hardships that the Court should consider.

### IV. Sentencing Recommendation

By focusing on the aspects of this case that we believe are favorable to Jonathan, we do not intend to ignore or defend the poor choice that he made. Rather, we hope to provide greater insight into the person who will stand before the Court at sentencing. When imposing a sentence, we request that the Court not only consider Jonathan Love's criminal acts, but his complete lack of criminal history, his exemplary service to our community and our nation, and the extent to which he is already being punished.

The parties respectfully ask this Court to sentence Jonathan to the following agreed sentence:

**McKay Chadwell, PLLC**
600 University Street, Suite 1601
Seattle, Washington 98101-4124
(206) 233-2800  Fax (206) 233-2809

- Thirty (30) days imprisonment;

- Restitution in an amount not greater than $12,000; and

- Resignation of all bar licenses and a prohibition on reinstatement for ten years.

The Probation Office also recommends imposition of the agreed sentence and their justification is persuasive. The agreed sentence comprehensively addresses the purposes of sentencing in 18 U.S.C. § 3553(a), given the entirety of the facts and circumstances of this case. This sentence would sufficiently punish Jonathan and prevent him from ever having the ability to engage in similar conduct while affording him the opportunity to quickly begin rebuilding his life and establishing his economic self-sufficiency.


DATED this 13th day of April, 2016.

**McKAY CHADWELL, PLLC**


s/ Robert G. Chadwell
s/ Thomas M. Brennan
Robert G. Chadwell, WSBA No. 22683
Thomas M. Brennan, WSBA No. 30662
Attorneys for Jonathan Love
600 University Street, Suite 1601
Seattle, WA  98101-4124
Phone: (206) 233-2800
Fax:    (206) 233-2809
Email: rgc1@mckay-chadwell.com
           tmb@mckay-chadwell.com

DEFENDANT LOVE'S SENTENCING MEMORANDUM - 13
NO.  CR 16-0005 BAT

McKay Chadwell, PLLC
600 University Street, Suite 1601
Seattle, Washington  98101-4124
(206) 233-2800  Fax (206) 233-2809

# Exhibit A

𝔖𝔲𝔭𝔢𝔯𝔦𝔬𝔯 𝔊𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔖𝔱𝔞𝔱𝔢 𝔬𝔣 𝔚𝔞𝔰𝔥𝔦𝔫𝔤𝔱𝔬𝔫
for the County of King

𝔍𝔲𝔡𝔤𝔢 𝔖𝔲𝔰𝔞𝔫 ℜ. 𝔄𝔤𝔦𝔡                                   𝔖𝔢𝔞𝔱𝔱𝔩𝔢, 𝔚𝔞𝔰𝔥𝔦𝔫𝔤𝔱𝔬𝔫
                                                              98104

                         13 November 1989

Ms. Andrea L. Zopp
Assistant United States Attorney
219 South Dearborn Street, 15th Floor
Chicago, Illinois 60604

        Re:  Jonathan M. Love

Dear Ms. Zopp:

I am writing to recommend Jon Love for consideration for a
position as an Assistant United States Attorney with your office.
I have known him in a professional capacity for over two years of
his tenure as a Deputy Prosecuting Attorney in the Criminal
Division of the King County Prosecutor's Office.  Jon has tried a
number of cases in my court, all of which have been difficult
felonies. One of those, State v. Penn, is listed on his resume.
It involved complex legal issues and difficult proof problems
when the defendant was charged as both a principal and an
accomplice in a series of crimes committed against two victims.

I have watched Jon's skills develop and become honed to the point
where he handles complex cases with great assurance and
professionalism.  He is well prepared and assertive and, at the
same time, shows compassion and understanding for traumatized
victims (and other witnesses) who come to court to testify.  He
devotes considerable effort to preparing both the case and the
witnesses so that the presentation is crisp and easy for the jury
to follow.  Jon thinks well on his feet, does not waste time on
unnecessary cross examination, and is very responsible about
informing the court of the applicable authority on legal and
evidentiary issues that arise before and during the trial.

In summary, it is my judgment that he is an excellent trial
lawyer who represents his client well, argues ably but also
accepts the rulings of the court and adjusts extremely well to
the vagaries of each trial. His intelligence was apparent to me
from the first time he appeared in my court, and he has
demonstrated his considerable abilities both in trial and in
working with witnesses and the court in every subsequent
appearance he has made.  I recommend him highly.  If you have
additional questions about Jon, please feel free to call me at
(206) 296-9105.

Very truly yours,

Susan R. Agid

# Exhibit B

OFFICE OF THE PROSECUTING ATTORNEY
KING COUNTY, WASHINGTON

Norm Maleng
Prosecuting Attorney

W 554 King County Courthouse
516 Third Avenue
Seattle, Washington 98104
(206) 296-9067
FAX (206) 296-9013

12 July 1994

Rosselle Pekelis, Acting Chief Judge
Washington State Court of Appeals, Division One
One Union Square
600 University Street
Seattle, WA 98101

Re:  Application of Jonathan Love for Staff Attorney

Dear Judge Pekelis:

I am writing to commend the application of Jonathan Love for the
Court of Appeals Staff Counsel position.  Jon has served as a
deputy prosecuting attorney in my office for nine years and I
have had the opportunity to watch him grow as an attorney and as
a leader in this office.

I am sure that Jon is no stranger to anyone at Division One; he
has argued over 40 criminal cases in front of you over the years.
Jon is a quick study, has a remarkable memory for case details,
and is a good writer.  His capacity for hard work has been amply
demonstrated throughout his tenure in this office.

I am excited about the prospect of Jon Love working for the Court
of Appeals.  While you could find any number of applicants,
including Jon, who are competent at legal research, I believe
that his familiarity with the courtroom, trial practice, and the
real work of lawyers in the trenches of criminal law should put
him at the top of the list of candidates for staff counsel.

The Court would be most fortunate to have Jon Love on staff.

If I can answer any questions about Jon Love, please do not
hesitate to call me at 296-9067.

Sincerely,

NORM MALENG
King County Prosecuting Attorney

# Exhibit C

S P O K A N E   C O U N T Y

JAMES R. SWEETSER
PROSECUTING ATTORNEY

OFFICE OF PROSECUTING ATTORNEY

County - City Public Safety Building
1100 W. Mallon Avenue
Spokane, WA 99260-0270
(509) 456-3662   FAX: 625-3409

February 6, 1997

Ben Duncan, Director
Human Resources
Spokane County

Dear Ben:

Jonathan Love, Senior Attorney, is scheduled to receive his initial step pay increase from step one to step two on April 1, 1997. In consideration of Mr Love's significant, lasting contributions to increased efficiency in prosecuting crime in Spokane County, I have elected to advance his salary placement to step three.

Mr Love has committed his knowledge, experience, and intense personal effort to put in place "charging and disposition standards" that will increase productivity and eliminate waste throughout the criminal justice system in Spokane County. Because the process requires endorsement and cooperation of the courts, defense bar, and law enforcement, he has invested much of his own time as an emissary to those agencies.

In addition to those accomplishments, Mr Love has assumed the preeminent role in establishing a partnership with the City of Spokane as we combine forces to combat domestic violence crime. He has spearheaded efforts to design the prosecution team and to identify and secure needed resources.

In both those initiatives, Mr Love has demonstrated commitment and invested personal effort well beyond that which could be reasonably expected. Since both initiatives are just beginning, his commitment and attention will be ongoing as the programs mature. I request your concurrence with compensation that is commensurate with Mr Love's lasting contributions to criminal justice in Spokane County.

Sincerely,

James R. Sweetser
Prosecuting Attorney

Criminal Division
County-City Public Safety Building
1100 W. Mallon Avenue
Spokane, WA 99260-0270

Civil Division
1115 W. Broadway
Spokane, WA 99260-0270
(509) 456-5764  FAX: 456-3672

Family Law Department
601 W. Mallon Avenue
Spokane, WA 99201
(509) 458-2486  FAX: 625-3410

Fraud/Drugs Unit
721 N. Jefferson
Spokane, WA 99260-0270
(509) 459-6416  FAX: 625-3409

Juvenile Department
1208 W. Mallon Avenue
Spokane, WA 99260-0270
(509) 456-6046  FAX: 625-3409

# Exhibit D



# OFFICE OF THE SHERIFF

## Spokane County

**SHERIFF**
John A. Goldman

UNDERSHERIFF
Michael J. Aubrey

UNDERSHERIFF
Burel C. Schulz

UNIFORMED SERVICES DIVISION
Insp. Michael D. Myhre

INVESTIGATIVE DIVISION
Cpt. Donald R. Manning

JAIL COMMANDER
James J. Hill

January 10, 1997

Mr. James Sweetser
Spokane County Prosecuting Attorney
W. 1100 Mallon
Spokane, WA. 99260

*Jon :*
*good job*

Dear Jim:

I am writing to express my sincere gratitude and appreciation for the expert instruction provided by Deputy Prosecuting Attorney Jon Love during our departmental December 3-14, 1996.

Jon dedicated his valuable time to training and educating law enforcement officers in the area of Domestic Violence, and provided suggestions to improve scene/evidence collection/processing, taking of witness statements, process for determining primary aggressor and avoidance of mutual combatant arrests.

Jon illustrated his commitment to the new Domestic Violence program and provided hope to our officers that the system "can work" and assist in avoiding repeat contacts with the same combatants. I personally look forward to working with Jon as a liaison for acceptance and implementation of domestic violence procedural changes.

Because of the professionalism and commitment to excellence of your office, and that of Jon Love, our commissioned personnel have a better understanding of the positive prosecutorial future of domestic violence cases.

Thank you so very much for making this valuable training possible.

Please consider placing a copy of this letter in Deputy Prosecuting Attorney Jon Love's personnel file.

Sincerely,

Greg Conner
Office of Professional Standards - Lieutenant

# Exhibit E

PERSONAL DATA

| NAME (Last, First, Middle Initial) | TEAM | POSITION |
|---|---|---|
| Love, Jon | Gang / Domestic | Team Leader |

PERFORMANCE INFORMATION

DESCRIPTION OF SUPERIOR PERFORMANCE

Jon Love began work at the Spokane Prosecuting Attorneys Office on September 3, 1996. He was assigned to the gang prosecution team. While handling his gang prosecution caseload, Jon has made significant contributions to the organization. Jon was instrumental in providing the King County charging and disposition standards to the office and revising forms to accompany the implementation of the charging standards. He also assisted with the Superior Court liaison meetings and obtained the King County Superior Court Judges criminal guidelines which were provided to our court. Jon has also assisted in the formation of the Spokane County Domestic Violence Team, attending numerous meeting with the court, city prosecutors, outside agencies, and staff. Jon took a leadership role in assisting with the development of the Prosecutors Office domestic violence protocol. He also devised a training outline for law enforcement and provided over (30) hours of training to the Sheriff's deputies. Jon continues to tactfully work with all the people in the judicial system and outside agencies to make "real" meaningful changes for the benefit of victims and the Spokane community.

INDIVIDUAL COMMENTS

TEAM LEADER COMMENTS

Jon Love has been excellent addition to the Spokane County Prosecutors Deputy Prosecutor staff. He knows that the domestic violence team and the charging and disposition standards can work. He is able to convey this to the Court, prosecutors, outside agencies, and staff. His first hand experience from King County, adds credibility and leadership. His diplomacy, tact, and method of assisting with necessary change has been outstanding.

ACKNOWLEDGMENTS

| TEAM LEADER SIGNATURE | DATE | INDIVIDUAL SIGNATURE | |
|---|---|---|---|
| James R. Sweetser | 12-23-96 | | 12/24/ad |

# Exhibit F

**U.S. Department of Justice**
Immigration and Naturalization Service

*Institutional Removal Program*
*P.O. Box 1536*
*Eden, Texas*

June 1, 2001

Gregory J. Ball
District Counsel
8940 Fourwinds Drive
San Antonio, Texas 78239

Dear Mr. Ball:

I would like to commend a member of your staff, Assistant District Counsel Jonathan Love, for his assistance in helping to establish a firm foundation for the Eden Institutional Removal Program (IRP) located at Eden, Texas. This unit's success is one in which Mr. Love has played an integral role.

Since November of 1999, Mr. Love has provided immeasurable assistance in the operational establishment of removal hearings at Eden. Increases in hearings and removal orders have steadily risen, due in large part to Mr. Love's ability to quickly turnaround cases.

Aside from his high work ethics, Mr. Love has established strong communications with all members of the Eden staff. As a result we have been able to open and complete cases in as short a period as one week. In our district, an uncompleted case from Eden translates into an average of twenty-five hundred dollars in detention costs. In Fiscal Year 2001, the unit has been able to keep these costs to a minimum by completing 910 of the 947 (96%) cases releasing to our custody. This is a dramatic difference from the 63% in 1999 and 80% in 2000. Mr. Love has been instrumental in those achievements at his able and diligent handling of cases as expeditiously as the law allows has promoted the operational effectiveness and success of the program.

Please express my gratitude to Mr. Love for his support and thank you for making this outstanding attorney available to my program.

Sincerely,

Alex Rodriguez
Institutional Removal Program Director
Eden, Texas

# Exhibit G

**JOHN BRADLEY**
**District Attorney**
**Williamson County**
**Texas**



(512) 943-1234
Fax (512) 943-1255

Hutto/Taylor line:  352-3661

405 Martin Luther King St., No. 1
Georgetown, Texas  78626

Board Certified-Criminal Law
Texas Board Legal Specialization

August 13, 2002

Mr. Jonathan Love
United States Department of Justice
Immigration & Naturalization Service
8940 Fourwinds Drive
San Antonio, Texas 78239

Dear Jonathan,

Thank you for coming to Williamson County last Friday to educate us on the effects our criminal plea agreements have on extradition proceedings.  It was quite informative and hopefully, will help us negotiate from a position of knowledge instead of guesswork.

If there is any information you need with respect to any particular felony case you become aware of in Williamson County where immigration is an issue, please feel free to contact me.

Sincerely,

Jana K. McCown
First Assistant District Attorney
Williamson County, Texas

# Exhibit H



**U.S. Department of Justice**
Immigration and Naturalization Service

COU90/17.1

Office of the General Counsel

*425 I Street NW*
*Washington, DC 20536*

**SEP 2 7 2001**

Jonathan M. Love, Esq.
Assistant District Counsel
U.S. Immigration & Naturalization Service
8940 Fourwinds Drive, Room 5045
San Antonio, TX 78239

Dear Mr. Love:

It is my great pleasure to inform you that your supervisors have recommended you for a Sustained Superior Performance Award for the rating period which ended June 30, 2001. I have approved their recommendation for an award in the amount of $2000, and have forwarded it to Headquarters Personnel for processing. The actual processing of this award should take between 30 and 60 days.

I firmly believe that it is critical for our program to identify and reward our most talented and devoted employees. You have represented the Service with distinction, and I wish you continued success in the future. Thanks for the great work.

Sincerely,

Bo Cooper
General Counsel

# Exhibit I



**U.S. Department of Justice**
Immigration and Naturalization Service

Office of the General Counsel

*425 I Street NW*
*Washington, DC 20536*

MAR 2 9 2002

Jonathan M. Love
Assistant District Counsel
Immigration and Naturalization Service
8940 Fourwinds Drive, Room 5045
San Antonio, TX 78239

Dear Mr. Love:

I have approved a Special Act Award for you in the amount of $1500.00. This Award is based on the special contributions you made to the Office of the General Counsel and the Legal Program in the weeks and months immediately following the World Trade Center attacks. As a group you, and other volunteers from throughout the Nation, served a critical role in the administration of the World Trade Center Task Force.

You contributed significantly to the development of policies and procedures for the Service to follow in the aftermath of the September 11 terrorist attacks. For nearly a three-month period, the Office of the General Counsel was required to staff the INS Command Center, the FBI SIOC, and a separate Legal Sufficiency Review Team on a 24-hour, seven-day-a-week basis. This around-the-clock coverage required huge sacrifices on the part of the employees, requiring routine night and weekend shifts. Numerous employees were unable to follow their Alternative Work Schedules (AWS) during this time period, and their personal time with their families as the holidays approached was severely limited.

Your special accomplishments during this historically significant time certainly warrant recognition. These accomplishments have demonstrated outstanding professionalism and are a tribute to the Office of the General Counsel and to the agency as a whole. The sacrifices you and others made in the post 9-11 period are truly commendable, and contributed significantly to the success of the Service in managing its responsibilities in the months following the tragedies.

Sincerely,

Dea Carpenter
Deputy General Counsel

# Exhibit J

U.S. Department of Justice
Immigration and Naturalization

Time-Off Award
Approval Form

**TO BE COMPLETED BY REQUESTING OFFICE:**

Employee Name: _JONATHAN LOVE_

Location: _SAN ANTONIO, TEXAS_

Org. Code: _____

Check One:   PMS ☐   PMRS ☐
No. of Hours Granted: _8_   SSN: _____

**TO BE COMPLETED BY PERSONNEL SPECIALIST:**
NOAC: _873_
Approval Date: _____
Authority Code: _V3E/5USC 4502(e)_
Deadline Date for Use (1 Year) _____

Each award must be supported by a separate Form G-923.

Justification: (Please attach additional sheets, as needed)

JON DID AN OUTSTANDING JOB ON TWO TERRORISTS CASES WHICH CONTAIN
SECRET INFORMATION AND A CLOSED HEARING. THE CASES WERE OF REGIONAL
NATIONAL SIGNIFICANCE, HIS APPROACH WAS CREATIVE, INVOLVING NOVEL
AND COMPLICATED LEGAL & FACTUAL ISSUES. HE DEVOTED SUBSTANTIAL
EFFORT & HOURS MUCH OF IT ON HIS OWN TIME TO ENSURE THE
GOVERNMENT'S CASE WAS PROPERLY PRESENTED (THE TERRORISTS WERE
REPRESENTED)

Approval Authority:

4 – 8 Hours:    Employee's Reviewing Official

9 – 40 Hours:   Field Components – DDs, CPAs, Service Center Directors and Director, HQ Asylum Branch
                Regional Offices – Regional Administrators or Staff Assistants for Field Operations (SAFOs)
                Headquarters – Assistant Commissioners of Office Heads

NOTE: PMRS Awards in excess of three days require approval from Service Incentive Awards Board. A board
member will sign in the approving official's place.

_____   _1/8/03_
Nominating Official's Signature        Date

_____   _1-10-03_
Approving Official's Signature         Date

NOTE: Submit form to your servicing Personnel Office immediately after approval so official paperwork may be
prepared.

**TO BE COMPLETED BY THE SERVICING HUMAN RESOURCES OFFICE:**

Approval: I certify that the information entered on this form is accurate and that the proposed action is in
compliance with statutory and regulatory requirements.

_____   _____   Timekeeper's Record is on
Signature                  Date                       reverse side.

Form G-923 (4/16/93)                                  SNA Reproduction (10/99)

# Exhibit K

U.S. Department of Homeland Security
8940 Fourwinds Drive
San Antonio, TX  78239



**U.S. Citizenship
and Immigration
Services**

20/8

June 12, 2006

Greg Ball
Chief Counsel
Immigration and Customs Enforcement
San Antonio, Texas

Re:  Trial Attorney Jonathan Love

I would like to take this opportunity to commend the work efforts of Trial Attorney Jonathan Love.

As you know, USCIS is currently processing hundreds of cases for replacement alien registration cards.  A large majority of these have criminal records which may or may not require the issuance of Notice to Appear.

Mr. Love has assisted our office by analyzing relevant information on each case and giving our staff sound advice on Section 212 and Section 237 removal grounds.  He is always available when a question or issue arises regarding criminal aliens.  As of this writing he has reviewed over 165 files containing criminal indictments, convictions and sentencing documents.  He has drafted 96 Notices to Appear which included 27 aggravated felons and 2 reinstatements.  Due to his efforts, more than 15 aliens have been arrested pursuant to Section 236(c) of the Immigration and Nationality Act as related to the detention of criminal aliens.

Mr. Love has also notified our office that 61 of these cases still require additional documentation to determine deportability and has advised us as to which documents are necessary.  Having his expertise available at the time of preparing the charging document saves time and avoids costly duplications of effort.  Also, due to his assistance, we have been able to clear and move forward with the adjudication of approvable applications.

Trial Attorney Jonathan Love is to be commended for his hard work and dedication.  He exemplifies the "one team" spirit of Department of Homeland Security.  We sincerely appreciate his professionalism and assistance.

Kenneth L. Pasquarell
District Director
San Antonio District Office

# Exhibit L



**U.S. Department of Homeland Security**
Bureau of Immigration & Customs Enforcement
8940 Fourwinds Drive
San Antonio, Texas 78239

SNA-

Office of Litigation & Legal Advice

*Post Office Box 1939*
*San Antonio, TX 78297*

August 10, 2006

Mr. Jonathan M. Love
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
8940 Fourwinds Dr.
San Antonio, Texas 78239

Dear Mr. Love:

It is my great pleasure to inform you that the Principal Legal Advisor has approved my recommendation that you receive a cash award for your contributions to the ICE legal program. The nomination, in the amount of $2,000.00, has been forwarded to the Human Resources Office for processing, which may take up to 60 days to complete.

In nominating you for the award, I specifically noted the initiative you took in this office in cases involving simple assault arguing that such crimes are both crimes of violence and crimes of domestic violence. You received praise from the Appellate Counsel for the brief you wrote on this issue to the BIA. You also received a commendation from the San Antonio CIS Director for your voluntary efforts in reviewing files and drafting NTAs for CIS.

Being part of the Department of Homeland Security is exciting and challenging. As we continue to pursue our mission and to make our vision statement a reality, it is more important than ever to recognize the significant contributions and superb work of employees such as you.

I firmly believe that it is critical for our program to identify and reward our most talented and devoted employees. You have performed with distinction and I wish you continued success in the future. I know you will keep up the great work.

Sincerely,

Gregory J. Ball
Chief Counsel

# Exhibit M

Judge Tsuchida:

First off, I would like to apologize to the Court, the DHS, ICE, Seattle Office of the Chief Counsel and foremost Mr. Lanuza. Everyone, present in this courtroom, is most likely asking the question, why did I do this? If I truly knew, I would not be standing here in front of you. I had no prior relationship with Mr. Lanuza and no personal animosity toward him. As you can surmise from the facts, it was not the work of a very sophisticated nor premeditated person. Rather, it was stupid and unnecessary, and the consequences of my actions have tarnished my hard work and dedication to public service for the last thirty years.

Despite, proudly serving King, and Spokane County of the State of Washington and hundreds of crime victims throughout my 12 year career as a Deputy and Senior Prosecuting Attorney, I, for some reason, internally felt inferior, lacked confidence in my abilities, and struggled to find inner peace through most of my adult life. Many people have demons, and I have been involved in learning and working on mine for over thirty years. I have gained insight into my emotions, personality and self-destructive behavior throughout my life. Nevertheless, given the offense for which I stand here now, I was not completely able to overcome the insecurity and deep seeded emotions which have prevented me from believing, trusting and respecting myself, and accepting my limitations.

The one aspect of my life that I felt positive about was the fact that I believed I was an excellent litigator, and was doing important work for victims of crime and the U.S. Government. It is a difficult job, and one I am sure the Court can appreciate, attempting to convince twelve strangers, that the defendant who is presumed innocent of a horrible crime, was guilty of such an offense. This is the one aspect of my life in which I felt competent and successful. I worked hard to acquire a reputation of being an attorney who is prepared, organized, and respected by the courts.

As an INS/DHS attorney, I also felt a sense of pride, and accomplishment in my job. This was especially true after the terrorist attacks of 911. I was the only National Security Attorney in San Antonio, Texas, and litigated cases involving aliens who were from such groups as Hamas and Al Qaeda, and removed aliens who were from other designated terrorist groups around the world. I was sent to Washington D.C., weeks after the attacks to assist, on a team consisting of three attorneys working 24 hour shifts to assist all law enforcement agents in the field. I always felt a sense of pride working with all agencies of law enforcement and gained many friends for my life through my work in public service. Now, I have thrown all of that away.

As a result of this offense, I have lost just about everything: my legal career, friends, coworkers, reputation, and my spouse of twenty years. I am now estranged from 18 year old daughter. My dreams of retirement, where I could enjoy the rest of my life remaining active in sports, assisting my community and being a good father and mentor to my children are irreparably harmed. Instead, I am an embarrassment and no doubt, have cause psychological harm to those I care for through this process.

I would like to thank my attorneys for their professionalism and advocacy, Mr. Fitzgerald and Mr. Cowan for their professionalism and their words of encouragement. Mr. Fitzgerald, went beyond the call of duty by setting me up with Ms. Kaman, a Senior Probation Officer, who is attempting to assist me in finding employment.

I have suffered from major depression most of my life, and hopefully, after this offense and the consequences are behind me, I will be able to find the one thing I have hoped for my entire life: peace and self-dignity. I am truly sorry to all I have hurt through my offense. I take full responsibility.

Sincerely,

Jonathan Love

Jonathan Love

# Exhibit N



Ashbaugh Beal

1400 Columbia Center
701 Fifth Avenue
Seattle, WA 98104
206/386-5900

ROBERT S. MARCONI
BMARCONI@ASHBAUGHBEAL.COM

March 31, 2016

The Honorable Brian A. Tsuchida
United States Courthouse
700 Stewart Street, Suite 12143
Seattle, WA 98101

RE:     United States v. Jonathan Love
        No. CR 16-5 BAT

Dear Judge Tsuchida:

My name is Robert S. Marconi and I have known Jon Love since 1985. I work at the law firm Ashbaugh Beal, where I am a partner and chair of our firm's construction law group. I was previously employed by the King County Prosecutor's Office, where I first met Jon. Judge Tsuchida, I recall working on a few cases with you during those early days at the King County courthouse.

I know Jon is very sorry for what he did; he has told me so. He has stated to me multiple times that he wants to apologize to all of the people he has impacted. I'm sure he will take a significant step in this regard at his upcoming sentencing.

Jon is a good person. He has been a good friend to me and my wife, Julia for over 30 years. He has been like an "uncle" to my two children, who both love Jon. He has been generous and kind.

He has been a great father, and in particular has a special bond with his youngest daughter Mylah. He treats her with kindness and gentleness.

Jon has paid a heavy price for his actions. He lost his job and his law license. He will likely lose his liberty as well. I believe when Jon is able to move on from this he will spend the rest of his life trying to make a better person of himself.

I urge you to show leniency to Jon at his sentencing.

Thank you.

Sincerely,

Robert S. Marconi

Robert S. Marconi

# Exhibit O



**STEVENS &**
**GRANADOS**
——— PLLC ———
ATTORNEYS AT LAW

March 18, 2016

The Honorable Brian A. Tsuchida
United States Courthouse
700 Stewart Street, Suite 12143
Seattle, WA 98101-9906

Re:     **United States v. Jonathan Love**
        **No CR 16-5 BAT**

Dear Judge Tsuchida:

My name is Amanda Stevens. I am an attorney practicing law in Yakima, Washington. I practice both Criminal as well as Immigration law. I have been admitted for practice in the State of Washington since 2001. I came to know Jonathan through my practice in the Immigration Court in Seattle, Washington. I am writing this letter of support for Jonathan Love and request leniency in his sentencing.

Over the years I have had many opportunities to speak with Jonathan both inside and outside of the courtroom. We have swapped stories about the law and also talked about our families. Jonathan always came across as an extremely intelligent attorney and a very devoted and concerned family man. I looked forward to having cases with Jonathan because I knew that he would be a tough, yet fair prosecutor. Jonathan always impressed me with his vast knowledge of the law and his ability to recall cases and specific legal authority for very unusual issues. At times I would call Jonathan to ask legal questions and solicit advise on cases and he was always more than happy to oblige even though he didn't have to and did so only out of the kindness of his heart.

It saddens me to think that Jonathan will no longer be with the Department of Homeland Security. He is a great legal mind and obviously was meant to be an Attorney. His inability to practice law is an extremely harsh punishment and one that will have a lasting impact on his family. I ask that you consider his many years of employment for our government and all the good that he has done in his lifetime. This one brush with the law is completely out of character and not a true representation of who Jonathan is and who he has been in his lifetime. I know personally that this investigation and legal process have taken a toll on Jonathan's emotional as well as physical health. I have seen the deterioration and have been very worried that he has slipped into depression.

Please consider this letter alongside the other documentation that you have received in making your determination of an appropriate sentence for Jonathan. If probation alone is possible, I urge you to find Jonathan an appropriate candidate.

Very truly yours,

Amanda A. Stevens
Attorney at Law

307 N. 3RD ST., STE. 3
YAKIMA, WA 98901
PH: 509.895.7811
FAX: 509.895.7815

# Exhibit P

**BRUCE C. HORI**
4841 88th Place Southeast
Mercer Island, Washington 98040
(206) 790-9876

The Honorable Brian A. Tsuchida
United States Courthouse
700 Steward Street, Suite 12143
Seattle, WA 98101-9906

Dear Judge Tsuchida,

I am writing you to provide some helpful and critical background on my dear friend Jonathan Love. I have known Jon for over thirty years. We first met in Law School at the University of Puget Sound. During and after law school we were roommates for several years. In addition, Jon has vacationed with my family on occasion. He is a close family friend and we are all very fond of him.

After law school I went to work for my family's import/export business. The company primarily imported fruit from Japan (satsuma oranges and Asian pears "nashi"). During this time I was living with Jon and I expressed interest in pursuing a legal career. At the time Jon was working at the King County Prosecutor's Office and he encouraged and helped me to pursue a career in public service. With Jon's guidance and encouragement I applied for and was hired by the Seattle City Attorney's Office in 1990 where I worked as a prosecutor, land use attorney and tort litigator. After fifteen years at the Seattle City Attorney's Office I was hired to be the Director of Risk Management for the City of Seattle. I have been in this positon for over ten years. Without Jon's encouragement I may not have pursued a career in public service. In addition, I was appointed to the King County Personnel Board by Ron Sims and I have served as a Pro Tem Judge in King County District Court, Seattle Division.

I understand that Jon has bravely admitted the wrongfulness of his action by pleading guilty. This was the proper thing to do but I imagine it was a painful decision that brought him to grips with what he did. I do not defend his actions but I do defend his character and I would like to share with you some of the reasons I wholeheartedly believe that it would be proper for the court to be merciful with its sentence.

Ever since this matter was reported in the newspapers I have not spoken with Jon, despite my efforts to talk with him and have him over to my house to see my family. The humiliation and dishonor has taken a tremendous toll on him. He has isolated himself, his marriage has ended and he is broke. His legal career is gone. I do not believe he is able to find meaningful employment. He is too embarrassed to meet with his friends. Jon knows that he made a huge mistake and he is extremely remorseful. This is painfully sad for him, his friends and his family. Shame and isolation can be the most powerful punishment a man can experience.

The fact that Jon committed this crime is shockingly at odds with the person I know because the most precious person in his life is his daughter Mylah, who is an immigrant child he and his ex-wife adopted from Guatemala. I know that Jon has done everything he can to provide Mylah with a secure home, education, love and support so she will have opportunities she would not have had in Guatemala. Jon's love and support is critical to Mylah's life and I respectfully ask you to consider Mylah's wellbeing and Jon's compassion and generosity toward her when you decide on an appropriate sentence.

Jon has expressed in text messages that he has no health care insurance and has no opportunities for meaningful employment. He has already suffered considerably, is genuinely remorseful and has already paid the price of his career and possibly his health. I know Jon well and can honestly say he is a good person. I am a Japanese-American and he has always treated me and my family with respect, equity and kindness. Sadly, the impact of the conviction alone has scarred him for the rest of his life and his future is bleak (at this time). It would be terrible if this one mistake, which is wholly inconsistent with his lifetime of good work in public service, resulted in any incarceration. I know that Jon has learned his lesson and he remains a good person who can still be a productive member of society and a friend and father to those that love him – including me.

For the reasons stated above, I respectfully ask you be merciful with your decision and not impose any incarceration.

Very truly yours,

Bruce Hori, WSBA #15789

# Exhibit Q

March 21, 2016

The Honorable Brian A. Tsuchida
United States Courthouse
700 Stewart Street, Suite 12143
Seattle, WA  98101-9906

Dear Judge Tsuchida,

My name is Victor Mason and I am writing to you on behalf of Jonathan "Jon" Love in hopes that my comments will help you to see the genuinely good person that Jon is and to consider a merciful sentence.

By way of introduction, I am currently a Captain at Alaska Airlines and have been employed there since 2001.  Prior to that I had various flying jobs starting with my first flying job as a US Navy pilot.  I graduated number one in my class from Aviation Officer Candidate School in Pensacola, Florida in 1986 as a Distinguished Naval Graduate.  I graduated with a BA in English Literature from Occidental College in Los Angeles with Departmental Honors in 1981 and was also an All-American Swimmer.  I received my Eagle Scout Award in 1977.

I have known Jon since our college days at Occidental.  I met him in 1978 and he has been one of my best friends since that time.  We were roommates at Occidental and our friendship has continued and grown through the years.  We have gone on skiing vacations and camping trips together, he knew and loved my parents and made the trip to Los Angeles to attend both of their funerals.  He has spent Thanksgiving at my house, I was an usher at his wedding and he asked my wife and I if we would become guardians for his two daughters, Aytanah  and Mylah, should he and his wife die before the girls reached adulthood.  We enthusiastically agreed.  Jon is not just a friend, he is my brother, in every way but blood.

I know that Jon has admitted the wrongfulness of his actions by pleading guilty to the charge of violating an individual's civil rights.  All of us make mistakes in life, both personal and professional, and this situation is not representative of the man I know.  Jon is a generous, caring, loving person.  He took the extraordinary step of adopting his daughter Mylah from Guatemala, rescuing her from a life of poverty and struggle,  giving her the chance to live a life of endless possibility.  I have witnessed Jon and Mylah together many times during overnight trips in Seattle and I can say without reservation that he is a fantastic father.  Mylah loves her dad unconditionally and I know that she is his greatest joy in life.  The consequences of interrupting that relationship would be tragic for both Mylah and Jon.

Jon's actions have cost him his reputation, a career he loved and much of the money he has saved for retirement.  He has confided in me that the ordeal has been humiliating, embarrassing and that he has been battling depression as a result of the consequences of his actions.  The remorse he feels is palpable and I know he regrets his actions both for the harm it has done to his profession and the disastrous effects it has had on his personal life.  The effect of this on his future have caused him to seek counseling, both from close friends and medical professionals.  Future job prospects have been almost non existent and the likelihood of losing time with Mylah is almost more than he can bear.  The pure, unconditional love between a father and daughter

and his desire to protect her from his mistakes are his prime motivations for surviving this ordeal and moving forward with his life.

Jon has always been a positive supportive force in my life when things didn't go so well for me. I have been doing everything in my power to support and help him through this very trying time. I can say without reservation that I would trust Jon with my life.  He made a mistake, an error in judgement that has ruined the life that he knew. I know that he is focused on rebuilding a life with his young daughter Mylah and working to make sure she has all the opportunities that he can give her.  It is my hope that you will take this into consideration while sentencing, that the punishment Jon receives will allow him to continue caring for his daughter, Mylah.  It is my hope that you can see the truly caring, loving person that Jon is and be merciful in your sentencing, despite the apparent disconnect between the person who committed this wrong and the genuinely good person that I know him to be.  Thank you for considering my plea.

Sincerely,

Victor Mason

# Exhibit R



Saving Lives Since 1996

March 23, 2016

The Honorable Brian A. Tsuchida
United States Courthouse
700 Stewart Street, Suite 12143
Seattle, WA  98101-9906

Dear Judge Tsuchida,

I have known Jonathan "Jon" Love since we were freshmen at Occidental College.  In short, for a very, very long time.  Unlike most college friends who end up dropping off the radar over the years, Jon has been a constant in my life.  Always there through the best and the worst of times: holidays, weddings, adoptions, births and deaths.  He was a pall bearer for both of my husband's parents.  Jon has been a true friend through it all.

I realize that a snapshot of Jon's misconduct, without benefit of the entire picture of who he is, is likely to point to a serious flaw in his character.  But as someone who knows him well and who has a very clear, big picture, I would describe his offense, instead, as a serious lapse in judgment.  And no one is more keenly aware of the magnitude and gravity of his misstep than Jon.

When I first learned of the charges and punishment that Jon faced, I was struck by his singular concern for the impact it would have on his youngest daughter, Mylah.  My friend was facing the loss of his job, financial ruin, humiliation and the very real possibility of jail time.  And yet the only worries I heard him express were for the effect this would all have on Mylah.  Over the many months and countless conversations that have followed, I have expected to hear Jon eventually sober to the profound ways in which his actions will forever cast a shadow over his own future.  But I have not heard him once turn his focus away from Mylah.

Yes, Mylah has an older sister and a mother who love her.  But the bond between Mylah and her dad is palpable and profound.  I have seen her bring out the very best in her dad over the years in many ways.  One particular example comes to mind: Jon loves to play golf.  So when I invited him for a weeklong stay at my mother's home in Rancho Mirage, California,  a mere nine iron's distance from the world-class Mission Hills Golf Course, I was shocked when he declined.  Even more stunning was the reason.  He wanted to surprise Mylah with a daughter/dad trip to Disneyland.  Now, Jon is just about the last person I know whose idea of fun would be a trip to Disneyland.  But there he was, as excited as he could be to set out on the big adventure with Mylah.

T: (310) 652-9838
F: (310) 652-2022
mail@help4pets.com
www.help4pets.com

HELP4PETS, INC.
8721 Santa Monica Blvd., #710
Los Angeles, CA 90069

As someone with decades-long family ties to immigrants from Guatemala, I was thrilled when I first learned that Jon was seriously considering adopting a child from this overwhelmingly poor and dangerous part of the world. As I watch Mylah conquer life's challenges and flourish in the world that Jon has helped make possible for her, I often think how fate could so easily have bent in the other direction.

And now the fickle path of fate may do just that. Through absolutely zero fault of her own, Mylah may now be forced to share the punishment for her father's misconduct. It is my hope that while contemplating sentencing the court will take into consideration the heavy price that Jon has already paid and will continue to pay well into his future so that Mylah may be spared.

Yours sincerely,

Liz Blackman

# Exhibit S



**U.S. Department of Justice**

*United States Attorney*
*Western District of Washington*

---

*Please reply to:*
*Matthew Diggs*
*Assistant United States Attorney*
*Direct Line: (206) 553-2260*

*700 Stewart Street, Suite 5220*   *Tel: (206) 553-7970*
*Seattle WA, 98101-1271*       *Fax: (206) 553-2502*
*www.usdoj.gov/usao/waw*

February 25, 2016

Mr. George Y. Cho
Senior Attorney
U.S. Department of Justice
Federal Bureau of Prisons
FDC SeaTac
2425 SW. 200th Street
SeaTac, WA  98198-1091

        Re:    United States v. Jonathan Love
               <u>CR15-0006BAT, USDC WDWA</u>

Dear Mr. Cho:

    We write jointly to inform the Federal Bureau of Prisons about unique circumstances that pose potential safety risks related to Mr. Jonathan M. Love's imprisonment.  Mr. Love is scheduled to be sentenced on April 20, 2016 regarding his January 15, 2016 misdemeanor plea agreement and admission of guilt under 18 U.S.C. § 242.

    Mr. Love has been a career prosecutor and government attorney.  For the past 19 years, Mr. Love has been enforcement counsel for the Immigration and Naturalization Service and Immigration and Customs Enforcement (ICE) in both Seattle and San Antonio.  Mr. Love served as the Assistant Chief Counsel and Assistant District Counsel in those locales.  In that capacity, Love represented the federal government in alien removal, asylum and citizenship proceedings.  His practice initially focused on criminal activity and evolved into the prosecution of alien terrorist members and organizations.  More recently, Mr. Love was a staff attorney on the Department of Justice's Operation Sexual Predator in Immigration Court proceedings.  As a federal ICE attorney, Mr. Love opposed hundreds of aliens who might be currently housed in the Bureau of Prisons system.

    Prior to working for ICE, Mr. Love was a prosecutor for twelve years in both the King County Prosecuting Attorney's Office and the Spokane County Prosecuting Attorney's Office.  He worked, for example, on a felony trial team, a Special Assault Unit and a Domestic Violence Unit.  Again, he prosecuted a great number of individuals.

Mr. Cho
Federal Bureau of Prisons
February 25, 2016


Mr. Love has pleaded guilty to a wrongdoing committed during an Immigration Court alien removal proceeding.  Mr. Love admitted to depriving an alien of rights under the U.S. Constitution and the laws of the United States.  Given the nature of this offense and Mr. Love's long history as a state and federal attorney, it is possible that certain populations within the federal prison system might target Mr. Love for physical and emotional abuse.

Hence, to minimize the risk of harm, we jointly request that Mr. Love be assigned to a facility that reduces the likelihood that he will interact with individuals he might have prosecuted over the years or individuals that might be sympathetic to aliens that have been prosecuted in a federal Immigration Court.  Accordingly, we request that the Bureau of Prisons take these factors into consideration when choosing a facility to house Mr. Love.  We posit that a minimum security/camp facility in the upper Midwest of the United States might satisfy these concerns. Your office, of course, knows the demographics within each Bureau of Prisons facility and the geographic location that might best suit Mr. Love.

We appreciate your consideration of this matter.  Please contact either of us if you have any questions.


Sincerely,

ANNETTE L. HAYES
United States Attorney


MATTHEW D. DIGGS
Assistant U.S. Attorney

ROBERT G. CHADWELL
Attorney for Jonathan M. Love